***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction of the parties and the subject matter. *Page 2 
2. On all relevant dates the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
4. On all relevant dates an employee-employer relationship existed between plaintiff-employee and defendant-employer.
5. At the time of the incident giving rise to this claim on or about
21 September 2007, defendant-employer was insured for workers' compensation purposes by Liberty Mutual.
6. On all relevant dates, plaintiff's average weekly wage is $505.97, which yields a compensation rate of $337.33.
7. Defendants deny the compensability of plaintiff's claim of a workplace lumbar spine injury.
8. Subsequent to the hearing before the deputy commissioner, the parties submitted the following:
 a. A Packet of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2) and which included the following:
 (i) Medical Records;
 (ii) Plaintiff's Answers to Defendants' First Set of Interrogatories and Request for Production of Documents;
 (iii) Industrial Commission forms, and;
 (iv) Employment/Medical Records. *Page 3 
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is fifty-six (56) years of age with his date of birth being 26 September 1952.
2. Plaintiff was hired by defendant-employer as a material handler. In that capacity, plaintiff was required to move different parts, which he referred to as knuckles and are part of a hinge, around the warehouse. Later, plaintiff moved to a position in the warehouse department, where he was officially classified as a Store Keeper Number 2. In that capacity, plaintiff's job involved gathering parts from the warehouse, which at times required the operation of a high reach machine. The high reach machine is a piece of heavy equipment with forks in front that raise and lower the loads.
3. Although the Industrial Commission forms and the medical records reflect a date of injury of 21 September 2007, plaintiff testified at the hearing that it occurred on the last Friday of September 2007, which would be 28 September 2007.
4. Plaintiff alleges that on the date in question, he was given an order to retrieve four thousand (4,000) number 4 knuckles from the warehouse, an assignment that required use of the high reach machine. Once plaintiff retrieved the knuckles with the high reach machine, he claims that he carried the bins of parts to the scales. Plaintiff alleges that when he picked up a particular bin, he experienced the onset of a sharp pain in his back.
5. Picking up bins of parts was a normal part of plaintiff's job and there is no evidence that the bin in question fell or shifted in any manner. *Page 4 
6. Plaintiff's Industrial Commission Form 18 dated 17 October 2007 indicates that he was injured and experienced the onset of back pain while working on the high reach machine that was missing seat padding. The Form 18, which plaintiff signed, also indicates that later he was picking up a bin and experienced a sharp pain in his back. At the hearing, plaintiff denied ever reporting that he was injured on the high reach machine.
7. Plaintiff claims that following his injury he immediately reported it and his symptoms to his supervisor, Mr. Paul Williams and that Mr. Williams instructed him to sit down for a while, as plaintiff was scheduled to clock out at 2:30 and the incident occurred at approximately 2:15.
8. Mr. Williams has been plaintiff's supervisor during the entire period of his employment with defendant-employer and saw plaintiff on a daily basis, and throughout the workday. According to Mr. Williams, plaintiff did not report a workplace injury to him. Mr. Williams also testified that employees do not receive any type of safety bonus for accident-free periods, so in his opinion, there was no reason for plaintiff not to have reported an injury had he actually been injured at work.
9. Additionally, Mr. Williams testified that while working for defendant-employer, plaintiff had a side job as a self-employed painter and had been working on an apartment complex project.
10. On the Saturday following the date of the incident at issue, plaintiff testified that he returned to work to do inventory, which was essentially paperwork that would not aggravate his back.
11. On the following Monday, plaintiff reported to work, but testified that performing his normal duties aggravated his back. Therefore, plaintiff asserts that he went to defendant-employer's *Page 5 
nurse, Ms. Lou Anne Marshall, and reported having injured his back and hip while picking up bins in the warehouse. Plaintiff further testified that he was offered a type of icy hot substance and then returned to his regular job.
12. Plaintiff continued to work for defendant-employer in his regular position without missing time from work until 10 October 2007.
13. Nurse Marshall testified that had plaintiff initially reported a workplace injury, she would have started a medical chart for him and referred him to Dr. Spillman at Concentra. Plaintiff acknowledged that Ms. Marshall is present during his entire shift and that he could have reported an injury to her the previous Friday.
14. Based upon the information received from plaintiff, Nurse Marshall completed an Industrial Commission Form 19 on which it is reflected that plaintiff pinched his back while using the high reach machine.
15. Plaintiff claims that as he continued to work in his regular job, his back condition and symptoms continued and were aggravated by his duties. Due to his ongoing symptoms, plaintiff testified that he returned Nurse Marshall in early October, and was again offered a type of icy hot substance and advised to see a physician.
16. Plaintiff's employment and medical records from a couple of weeks prior to 10 October 2007 reflect that plaintiff went to defendant-employer's medical department and reported experiencing back pain that had begun on his way home from work. These records also reflect that plaintiff indicated that he was unsure of what caused his back pain and further indicated the only thing he could think of was that he had lifted 2 bins of No. 4 knuckles on Friday, 21 September 2007. Additionally, these records reflect that plaintiff reported he could *Page 6 
not really believe that he could have done anything to hurt himself and that he did not hit his back or anything.
17. On 10 October 2007, plaintiff was examined by his family physician, Dr. David Jackson. Plaintiff reported having experienced left-sided low back pain for approximately three weeks that radiated into his lower extremities. Records also reflect that plaintiff reported that his back pain started while the he was at work, where he is constantly lifting.
18. Plaintiff denied reporting that his back pain was related to having to constantly lift at work.
19. Dr. Jackson ordered an MRI to determine if the pain involved nerves or the spine and medically excused plaintiff from work as of 10 October 2007. The results of the MRI revealed degenerative disc disease with spinal stenosis.
20. Plaintiff's employment and medical records reflect that on 15 October 2007, plaintiff telephoned defendant-employer's nurse's office and reported that he had pinched his back while working on a high reach machine. Plaintiff further explained that there was a piece of foam missing on the seat of the high reach machine where he rested his back against the back of the machine and that the vibration of the machine pinched his back.
21. On 15 October 2007, plaintiff returned to Dr. Jackson and reported that while lifting a bin at work, he experienced the onset of low back pain that radiated into his lower extremity and that just prior to the onset of his pain had experienced a mild blunt trauma to his low back. An examination revealed that plaintiff had slight tenderness in his back for which he was prescribed Medrol and referred to a neurosurgeon.
22. On 18 October 2007, plaintiff was examined by Dr. David Kelly, to whom plaintiff reported having been injured at work on 21 September 2007 while maneuvering a *Page 7 
machine that hit him in the back. Dr. Kelly recommended physical therapy and continued plaintiff's medications. At that time, Dr. Kelly did not remove plaintiff from work or assign any limitations on his activities.
23. On 23 October 2007, Dr. Kelly wrote an out of work note for plaintiff but did not indicate how long he should remain out of work.
24. While out of work, plaintiff received thirteen (13) weeks of short-term disability benefits from an employer-funded plan in the amount of $200.00 per week.
25. On 10 January 2008, plaintiff was examined by Dr. Daniel Couture, at which time reported having injured his back on 21 September 2007 and that he had been out of work since that date. Dr. Couture discussed treatment options with plaintiff. Plaintiff indicated he wanted to get a second opinion in Virginia. At that time, Dr. Couture did not remove plaintiff from work or impose any restrictions on his activities.
26. On 3 April 2008, plaintiff returned to Dr. Couture with a new MRI. On this date, plaintiff reported that he had been out of work since 10 October 2007 after maneuvering a machine at work. The MRI plaintiff brought on that date was found to be incomplete due to motion and Dr. Couture ordered another MRI. The MRI ordered by Dr. Couture revealed no significant spinal cord compression and no significant stenosis or impingement on the nerve roots. In Dr. Couture's opinion, the MRI results established that plaintiff was not a surgical candidate and he informed plaintiff that surgery would not relieve his pain and may in fact increase his pain. Additionally, no follow up care was anticipated at that time and Dr. Couture did not medically excuse plaintiff from work or impose any restrictions upon his activities.
27. On 9 April 2008, in response to an inquiry by plaintiff's wife, Dr. Couture indicated that plaintiff had a workplace injury in September 2007 and that he had been unable to *Page 8 
work as a result of his acute pain. Dr. Couture also noted that plaintiff had recently had an MRI and physical exam that showed the improved condition since the injury he reported, but that he continues to suffer from significant degenerative changes in his lumbar spine which could prevent him from lifting more than fifteen (15) pounds. Additionally, Dr. Couture indicated that there was no medically related reason that plaintiff could not work in a capacity which does not involve heavy lifting.
28. When asked whether these restrictions and limitations to a reasonable degree of medical certainty or more likely than not were related to a traumatic incident, Dr. Couture opined that his MRI scan indicates a long-term process, but that the history provided by plaintiff was more indicative of an acute injury.
29. The Full Commission finds that plaintiff's testimony and reports to defendant-employer and his medical providers are inconsistent. Due to the inconsistencies in plaintiff's testimony and reports to defendant-employer and his medical providers regarding how he was allegedly injured, the Full Commission gives greater weight to the testimony of Mr. Paul Williams and Ms. Luann Marshall.
30. Based upon the greater weight of the credible evidence of record, plaintiff did not sustain an injury by accident arising out of or in the course of his employment with defendant-employer in the form of a specific traumatic incident or otherwise on or about 21 September 2007 or 28 September 2007.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 9 
1. In order to establish a compensable injury to the back, plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese, 92 N.C. App. 222, 224,374 S.E.2d 116,118 (1988),disc. review denied,324 N.C. 337,378 S.E.2d 799
(1989). Plaintiff did not sustain an injury by accident arising out of or in the course of his employment with defendant-employer in the form of a specific traumatic incident or otherwise on or about 21 September 2007 or 28 September 2007. Id.
2. Given that plaintiff did not sustain an injury by accident, he is not entitled to indemnity or medical compensation. Id.; N.C. Gen. Stat. § 97-19.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. The Plaintiff's claim for benefits under the North Carolina Workers' Compensation Act is hereby DENIED.
2. Defendants shall pay the costs.
This the 19th day of May 2009.
 S/___________________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
S/___________________ DIANNE C. SELLERS COMMISSIONER
S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1